UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:

BRIAN STARLING,

                              Debtor.
-------------------------------------------------------------------x

INTERNAL REVENUE SERVICE and
CONTINENTAL SERVICE GROUP, INC.,

                              Appellants,

         - against -

BRIAN STARLING,

                              Appellee.
-------------------------------------------------------------------x

**OPINION AND ORDER**

Nos. 20-CV-7478 (CS)
and 20-CV-7954 (CS)

<u>Appearances</u>:

Alexander J. Hogan
Assistant United States Attorney
New York, NY
*Counsel for Appellant United States of America*

Brendan H. Little
Tessa R. Scott
Lippes Mathias Wexler Friedman LLP
Buffalo, NY
*Counsel for Appellant Continental Service Group, Inc.*

Brian Fetzko
Fetzko Law Offices, P.C.
Middletown, NY
*Counsel for Debtor-Appellee*

1

Seibel, J.

Before the Court is the appeal of Appellants United States of America[1] and Continental Service Group, Inc. ("ConServe") from an order and decision of the Bankruptcy Court granting Debtor's contempt motion. For the following reasons, the Bankruptcy Court's order is reversed.

## I. BACKGROUND

### A. Debtor's 2002 Tax Liability

The relevant facts of this case begin eighteen years ago, when Debtor Brian Starling failed to timely file his 2002 federal income tax return by April 15, 2003. (*See* ECF No. 9-1 ("App'x") at 118 ¶ 3.)[2] On or about September 26, 2005, the IRS sent a letter to Debtor informing him that he had not filed a tax return for 2002 and that the agency had instead assessed the tax he owed. (*Id.* at 118-19 ¶ 7.) The IRS informed Debtor that he had to do one of the following, within 30 days of receipt of the letter: (1) file a Form 1040; (2) consent to the IRS's assessment by returning a signed form to that effect; (3) provide a statement explaining the basis for his belief that he was not required to file a return; or (4) appeal the proposed assessment. (*Id.*) After receiving no response from Debtor, the IRS sent him a final notice on December 13, 2005, stating the amount of his tax deficiency and informing him that he could either agree to the agency's determination by signing and returning an enclosed form, or contest the determination

---

[1] The decision below arose from Appellants' alleged violation of the debtor's discharge injunction. Title 26, United States Code, Section 7433(e) is the "exclusive" damages action available when a Debtor alleges a discharge injunction violation by the Internal Revenue Service ("IRS"). This section provides that a petition seeking such damages must be filed "against the United States." 26 U.S.C. § 7433(e). For this reason, the proper party to this action is the United States, not the IRS, but for consistency's sake I will refer to this party as the IRS throughout this opinion.

[2] Citations to docket entries refer to those in Case No. 20-CV-7478, the IRS's appeal. ConServe appealed on identical grounds in Case No. 20-CV-7954. On consent of all parties, I consolidated the two appeals on October 26, 2020. (ECF No. 7.) Citations to page numbers in ECF No. 9-1 refer to the number stamped in the bottom right corner of the page.

in U.S. Tax Court. (*Id.* at 119 ¶ 8.) Debtor did neither. (*Id.* at 119 ¶¶ 10, 11.) After the expiration of the 90-day period in which Debtor could have contested the determination in the Tax Court, the IRS assessed taxes against him for the 2002 tax year on June 5, 2006. (*Id.* at 119 ¶ 12; *Id.* at 278.) On August 28, 2007, Debtor submitted a Form 1040 individual tax return for the 2002 tax year to the IRS, apparently reflecting the same amount assessed by the IRS. (*Id.* at 119 ¶ 13.)[3]

### B. Debtor's Bankruptcy and the IRS's Proof of Claim

Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on July 3, 2013. (*Id.* at 11-46). The IRS submitted a proof of claim setting forth Debtor's unpaid federal tax liabilities on July 12, 2013, which it subsequently amended twice, with the final proof of claim signed on December 10, 2013 (the "Claim"). (*Id.* at 276-78.) The Claim included Debtor's general unsecured liability for his 2002 income taxes, which had an outstanding balance of $266.90, plus interest of $1,293.00, for a total of $1,559.90. (*Id.* at 278.) The Claim indicates that the IRS assessed Debtor's liability for the 2002 tax year on June 5, 2006. *Id.*

On July 3, 2013, Debtor filed a proposed Chapter 13 plan, which he then amended on December 20, 2013 (the "Plan"). (*See id.* at 47-55.) The Bankruptcy Court confirmed the Plan on February 11, 2014, (*see id.* at 56-60), and granted Debtor a discharge pursuant to 11 U.S.C. §

---

[3] The IRS's 2006 assessment and the Debtor's 2002 Form 1040 submitted in 2007 do not appear in the Appendix submitted on this appeal, and the parties did not provide the Court with information as to where these documents could be found on the Bankruptcy Court's docket, if at all. Further, the citations to the Appendix in the IRS's brief do not establish that the late-filed Form 1040 reflected the same amount as the IRS's June 5, 2006 assessment. (*See* ECF No. 9 ("IRS Brief") at 5-6 (citing App'x at 119, 278).) At most they show that the IRS's claim in Debtor's later-filed bankruptcy was based on the amount assessed on June 5, 2006. That might suggest that the 1040 did not report a different amount, but it is hardly definitive. In any event, because Debtor does not contest that his return reflected the same amount as the assessment, I infer that Appellants' contention in this regard is factually accurate.

3

1328(a) (the "Discharge Order") on May 19, 2016. (*Id.* at 61-63.) The Chapter 13 trustee submitted his final report on December 8, 2016, which indicated that only a small portion of the IRS's total general unsecured debt had been paid through the Plan. (*Id.* at 65.) Specifically, only $386.70 of the IRS's total general unsecured debt of $21,312.05 (which included the debt from tax year 2002) had been paid. (*Id.* at 65, 278)

        C.        **The IRS and ConServe's Attempts to Collect the 2002 Tax Debt**

On or about November 7, 2017, the IRS sent Debtor a notice informing him that the IRS had "assigned [his] overdue tax account to a private collection agency" called ConServe. (*Id.* at 96.) On or about November 8, 2017, Debtor's counsel mailed a letter to the IRS with instructions to cease all attempts to collect pre-petition debts from Debtor, because in counsel's view the tax liabilities at issue had been discharged. (*Id*. at 98.) On or about November 7, 2018 and November 7, 2019, Debtor received an "Annual Notice of Tax Delinquency" from ConServe on behalf of the IRS. (*Id.* at 70 ¶ 12, 104-05.) The amount sought to be collected in the 2018 notice was $929.99, and the amount sought to be collected in the 2019 notice was $982.40. (*Id.* at 104-05.) In November 2019, the IRS recalled Debtor's account and ConServe returned Debtor's account to the IRS. (*Id.* at 125.) As the tax debt now falls outside the ten-year statutory collection period under 26 U.S.C. § 6502, the IRS and ConServe have ceased attempting to collect it. (*Id.* at 119 ¶ 14.)

        D.        **Debtor's Contempt Motion and the Decisions Below**

After receiving the second "Annual Notice of Tax Delinquency" in November 2019, (*id.* at 70 ¶ 12, 105), Debtor moved in the Bankruptcy Court for contempt against the IRS and ConServe on February 14, 2020, (*id.* 68-71). He argued that his 2002 tax debt had been discharged by the court's Discharge Order, making it uncollectable, and therefore requested that

the Bankruptcy Court hold the IRS and ConServe in contempt for their attempts to collect a discharged debt.  (*Id.* at 69 ¶¶ 7-10.)

The Bankruptcy Court granted Debtor's contempt motion in large part on June 24, 2020. *In re Starling*, 617 B.R. 208 (Bankr. S.D.N.Y. 2020).  Judge Morris determined that the tax debt at issue had indeed been discharged and that the creditors' attempts to collect it violated the Discharge Order.  *Id.* at 217-224.  The Bankruptcy Court found that it could not impose monetary sanctions against the IRS because Debtor had not exhausted his administrative remedies, but opted to hold the IRS in contempt without any such sanction.  *Id.* at 217, 224.  The court further held that Debtor's motion against ConServe was not subject to any administrative exhaustion requirement and directed ConServe to pay Debtor "compensatory damages of $500.00 for each notice issued by ConServe seeking payment from the Debtor to compensate the Debtor for the stress and emotional distress he suffered," as well as $2,644.00 in attorney's fees. *Id.* at 223.

On July 8, 2020, the IRS and ConServe each moved for reconsideration of the Bankruptcy Court's order.  (App'x at 153-96, 197-204.)  The Bankruptcy Court denied those motions in an order dated August 4, 2020.  (*Id.* at 210-11.)  Judge Morris again concluded that the debt at issue had been discharged and rejected Appellants' argument that it was objectively reasonable for them to believe that the debt had not been discharged because, in her view, they ignored relevant authority holding that their collection attempts were unlawful and should have sought judicial clarification as to whether the debt was discharged before attempting to collect it. (*Id.*)  The IRS filed a notice of appeal on August 18, 2020, (*id.* at 241-43), and the IRS and ConServe together filed a joint notice of appeal on August 24, 2020, (*id.* at 244-46).

## II. LEGAL STANDARD

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  A district court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*.  *Overbaugh v. Household Bank, N.A.* (*In re Overbaugh*), 559 F.3d 125, 129 (2d Cir. 2009) (*per curiam*).  "When reviewing for clear error, [the Court] may reverse only if [it is] left with the definite and firm conviction that a mistake has been committed . . . ."  *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (cleaned up).  "Thus, if the factual findings of the bankruptcy court are plausible in light of the record viewed in its entirety, this Court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."  *Savage & Assocs., P.C. v. Williams Commc'ns* (*In re Teligent Servs., Inc.*), 372 B.R. 594, 599 (S.D.N.Y. 2007) (cleaned up).  And "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Id.* (cleaned up).

## III. DISCUSSION

The instant appeals center on two issues – whether Debtor's 2002 tax liability was discharged and whether it was appropriate for the Bankruptcy Court to hold Appellants in contempt for violation of the Discharge Order.

In bankruptcy, a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived," 11 U.S.C. § 524(a)(2), and a discharge order issued by a bankruptcy court "bars creditors from attempting to collect any debt covered by the order," *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1799

6

(2019).  Thus, the key question is whether the 2002 tax debt was discharged by the Bankruptcy Court's Discharge Order.  The Discharge Order specifically states:  "Some debts are not discharged[.]  Examples of debts that are not discharged are:  . . . debts for certain types of taxes specified in 11 U.S.C. §§ 507(a)(8)(C), 523(a)(1)(B), or 523(a)(1)(C) to the extent not paid in full under the plan . . . ."  (App'x at 61.)[4]

Section 523(a)(1)(B) holds that "an individual debtor" is not discharged "from any debt . . . for a tax . . . with respect to which a return, or equivalent report or notice, if required . . . was not filed or given."  11 U.S.C. § 523(a)(1)(B)(i).[5]  All parties agree that whether the 2002 tax debt was discharged depends on whether Debtor's Form 1040, filed in 2007 after the IRS had assessed his 2002 tax liability in 2006, constitutes a properly filed "return" for purposes of § 523(a)(1)(B).  (*See* IRS Brief at 14-35; ECF No. 11 at 1-4.)

Before 2005, the term "return" was undefined in the statutory language, leaving courts to fashion their own standards.  In determining whether a filing constituted a "return," courts predominantly employed the test developed by the Tax Court in *Beard v. Comm'r*, 82 T.C. 766 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986) (*per curiam*).  *See Casano v. Internal Revenue Serv.* (*In re Casano*), 473 B.R. 504, 506 (Bankr. E.D.N.Y. 2012) (collecting cases).  According to the *Beard* test, for a document to constitute a "return," (1) it must contain "sufficient data to calculate tax liability"; (2) it "must purport to be a return"; (3) "the taxpayer must execute the

---

[4] The parties seem to agree that only the exception under § 523(a)(1)(B) is potentially applicable here.  (*See* IRS Brief at 13; ECF No. 11 ("Debtor's Brief") at 1-2.)

[5] The provision also disallows discharge of tax debts where a return "was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition," 11 U.S.C. § 523(a)(1)(B)(ii), but Appellants acknowledge that this provision is inapplicable because "Debtor petitioned for bankruptcy more than two years after filing his Form 1040," (IRS Brief at 13 n.11).

[document] by signing it under penalty of perjury"; and (4) it must evidence the taxpayer's "honest and reasonable attempt to satisfy the requirements of the tax law." *See Beard*, 82 T.C. at 777.

The fourth prong of this test was usually the most contentious, and courts applied different standards for what constituted an "honest and reasonable attempt to satisfy the requirements of the tax law." The majority view, adopted by four circuits, considered outside factors to determine whether the attempt to satisfy the requirements of the tax laws was honest and reasonable. In the context of a late-filed Form 1040, these courts held that such a form did not constitute a return, because "when the debtor has failed to respond to . . . deficiency letters sent by the IRS, and the government has assessed the deficiency, then the Forms 1040 serve no tax purpose, . . . showing that the debtor's actions were not an honest and reasonable effort to satisfy the tax law." *United States v. Hindenlang* (*In re Hindenlang*), 164 F.3d 1029, 1034-35 (6th Cir. 1999); *see In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005); *Moroney v. United States* (*In re Moroney*), 352 F.3d 902, 906 (4th Cir. 2003); *United States v. Hatton* (*In re Hatton*), 220 F.3d 1057, 1060-61 (9th Cir. 2000).

The Eighth Circuit took a contrary view, holding that the "honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself, not from the filer's delinquency or the reasons for it." *Colsen v. Internal Revenue Serv.* (*In re Colsen*), 446 F.3d 836, 840 (8th Cir. 2006). This meant that "[t]he filer's subjective intent" in filing a Form 1040 was "irrelevant." *Id*. The Eighth Circuit reasoned that the taxpayers' late-filed Form 1040 satisfied the *Beard* test's fourth prong because it did not appear "obviously inaccurate or fabricated," and the filing of the form with the IRS "served an important purpose under the tax laws" because it "contained data that allowed the IRS to calculate his tax obligation

8

more accurately." *Colsen*, 446 F.3d at 840-41.  This was in contrast to the taxpayer's forms in *Hindenlang*, which "contained essentially the same information as the substitute forms that the IRS prepared and the calculation of tax did not change substantially." *Id*. at 841 (citing *Hindenlang*, 164 F.3d at 1031).

In 2005, Congress attempted to clarify the meaning of "return" by adding a "hanging paragraph" to § 523(a) as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").  *See Justice v. Internal Revenue Serv.* (*In re Justice*), 817 F.3d 738, 742 (11th Cir. 2016).  The hanging paragraph states:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*).

Post-BAPCPA, courts have taken different approaches to the question of whether a late-filed Form 1040 constitutes a "return" within the meaning of the statute.  Some courts, including the Third, Ninth, and Eleventh Circuits, have continued to apply the majority approach to the *Beard* test.  *See, e.g.*, *Giacchi v. Internal Revenue Serv.* (*In re Giacchi*), 856 F.3d 244, 247-48 (3d Cir. 2017); *Smith v. Internal Revenue Serv.* (*In re Smith*), 828 F.3d 1094, 1097 (9th Cir. 2016); *Justice*, 817 F.3d at 743-44.  Other courts, such as the First, Fifth, and Tenth Circuits, have applied a more stringent test, reading the hanging paragraph's mandate that a return "satisf[y] requirements of applicable nonbankruptcy law (including applicable filing requirements)" to include the original filing deadline.  *See Fahey v. Mass. Dep't of Revenue* (*In re Fahey*), 779 F.3d 1, 5 (1st Cir. 2015); *Mallo v. Internal Revenue Serv.* (*In re Mallo*), 774 F.3d 1313, 1321 (10th Cir. 2014); *McCoy v. Miss. State Tax Comm'n* (*In re McCoy*), 666 F.3d 924,

9

931-32 (5th Cir. 2012). These courts therefore apply a bright-line rule that a late-filed Form 1040, even if filed only one day after the deadline, cannot be a "return" for purposes of Section 523(a) and, thus, the associated tax liability cannot be discharged in bankruptcy. This approach is sometimes referred to as the "one-day-late" rule. *E.g.*, *In re DeFreze*, 589 B.R. 518, 521 (Bankr. W.D.N.Y. 2018).

The IRS here advocates for a somewhat looser approach than the one-day-late rule, arguing that the key consideration should be whether the taxpayer filed the document before or after the IRS assessed the tax at issue. (IRS Brief at 24 (citing *Casano*, 473 B.R. at 508, for the proposition that "the Court need not address the issue of whether any late filed Form 1040 would always result in the tax debt for the relevant year being nondischargeable" because the Form 1040 at issue was filed after the IRS's assessment of the tax)). The IRS argues that its proposed standard would comport with the purpose of the statutory scheme, which requires taxpayers to self-report their tax information, while avoiding the harsh results that might come with applying the one-day-late rule, such as disqualifying a return in an instance where there was good cause for the taxpayer's inability to file the return before the deadline. (IRS Brief at 24-26.) This standard would further the principle that "[t]he tax laws in this country require taxpayers to calculate their income tax liability, and to report the amount owed in a timely manner and to pay the tax liability so as to spare the tax authorities the burden of trying to reconstruct a taxpayer's income and income-tax liability without any help from him." *Casano*, 473 B.R. at 507 (cleaned up). While the IRS presents compelling reasons why I should adopt this approach, I need not decide which test is appropriate under the BAPCPA, because under each analysis the result is the same: Debtor's late-filed Form 1040 was not a "return," and his 2002 tax liability was therefore not discharged.

Under the one-day-late approach, where the "applicable filing requirements" language in the hanging paragraph is read to include the original tax filing deadlines, Debtor's Form 1040 was filed nearly four years after it was originally due. (App'x at 119 ¶ 13.) Under the IRS's proposed approach, the Form 1040 was filed more than a year after the IRS assessed his tax liability. (*Id.* at 119 ¶¶ 12-13.) And under the *Beard* test's majority view, Debtor has not demonstrated an "honest and reasonable attempt to satisfy the requirements of the tax law," as he not only filed his return four years late and after the IRS assessed the tax, but he ignored numerous notices from the IRS giving him opportunities to resolve his tax obligations. (*Id.* at 118-19 ¶¶ 7-11.)

The only conceivable standard under which Debtor's tax debt could be considered discharged is under the Eighth Circuit's standard from *Colsen*, which the Bankruptcy Court purported to employ. Reviewing its decision *de novo*, application of the Eighth Circuit's standard was an error of law, because that standard, respectfully, misapplies the *Beard* test. By looking only at whether the return looks on its face like it was properly filled out, the Eighth Circuit not only waters down the "honesty" part of the test, but ignores the "reasonableness" part of the test. Under *Beard*, "there must be an honest and reasonable attempt to satisfy the requirements of the tax law." 82 T.C. at 777. Yet under the Eighth Circuit's test, anyone who files anything resembling a return, at any time, is presumed to have acted honestly and reasonably, regardless of how many notices he has ignored and how many years have passed and how accurate the return is and how much effort the IRS had to expend to reconstruct his tax situation.

But even the Eighth Circuit is unlikely to have regarded Debtor here as having made an honest and reasonable effort. First, there is serious doubt that *Colsen*'s reasoning survives the

addition of BAPCPA's hanging paragraph, and at least one bankruptcy court within the Eighth Circuit has instead adopted the one-day-late test. *See Kline v. Internal Revenue Serv.* (*In re Kline*), 581 B.R. 597, 604 (Bankr. W.D. Ark. 2018).  Second, while *Colsen* held that "the honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself, not from the filer's delinquency or the reasons for it," *Colsen*, 446 F.3d at 840, the court also noted that the late-filed form in that instance provided the IRS with new information that assisted the agency in determining the taxpayer's ultimate tax liability, *id.* at 841.  The Eighth Circuit distinguished the facts before it from those in *Hindenlang*, "where the taxpayer's forms contained essentially the same information as the substitute forms that the IRS prepared and the calculation of tax did not change substantially." *Id.* (citing *Hindenlang*, 164 F.3d at 1031.)  Unlike in *Colsen*, Starling's late-filed Form 1040 appears to have simply reiterated the tax assessment the IRS had already performed, and although this effort may have been an "honest" attempt to satisfy his obligations under the tax law, it was hardly "reasonable" to ignore multiple notices and only file years late with the same number the IRS had already come up with on its own.  While I do not believe that the *Colsen* test is the appropriate one to apply here, especially in the wake of BAPCPA, Debtor fails to meet even that most lenient standard for avoiding § 523(a)'s discharge exception.

      For these reasons, the Court holds that Debtor's 2002 tax debt was not discharged as a matter of law in his Chapter 13 bankruptcy case.  The Appellants' collection attempts thus did not contravene the Discharge Order, and the Bankruptcy Court, respectfully, erred in finding Appellants in contempt.[6]

---

[6] In light of my ruling on the merits I need not address Appellants' argument that the finding of contempt here ran afoul of *Taggart*, which held that contempt sanctions are appropriate only where there is "no objectively reasonable basis for concluding that the

## IV.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision is reversed and the case is remanded to the Bankruptcy Court for vacatur of the contempt order and any other necessary proceedings consistent with this decision.  The Clerk of Court is respectfully directed to close the above-captioned cases.

**SO ORDERED.**

Dated: September 16, 2021
       White Plains, New York

*[signature: Cathy Seibel]*
CATHY SEIBEL, U.S.D.J.

---

creditor's conduct might be lawful." 139 S. Ct. at 1799.  But I note that it was far from clear that the IRS and ConServe were prohibited from pursuing the debt.  To the contrary, the weight of authority, as discussed above, would have indicated to Appellants that the debt was likely not subject to the Discharge Order.  *Taggart* also rejected the notion that a creditor in an unclear situation should be required to seek an advance determination from the Bankruptcy Court as to whether the debt had been discharged.  *See id.* at 1803.